### UNION PAC. R. CO. v. CHRISTENSEN et al.

(Circuit Court of Appeals, Eighth Circuit. July 13, 1921.)

No. 5801.

1. **Taxation ⬅⟹500—To authorize setting aside an assessment as discriminatory, the discrimination must be intentional and systematic.**

To authorize the setting aside as discriminatory assessments for taxes, it must appear that the discrimination in favor of one or more classes of property as against others was intentional and systematic, and errors of judgment by officials will not support a claim of discrimination.

⬅⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Taxation ⊜⇒40(5)—Assessment of property of a railroad company in a state as an entity held constitutional and valid.**

Code Supp. Iowa 1913, §§ 1334–1339, providing for the assessment of the property of railroad companies by the executive council of the state, based on a valuation of the entire property of a company in the state, and distributed between the counties and other subdivisions of the state for the purpose of local taxation in accordance with its mileage therein, are constitutional, and are not discriminatory because under such system a company having but a few miles of track in the state, all in one city, and having valuable terminal property there, is assessed at a higher valuation on its property in such city than other companies having a much greater mileage in the state, though their local property may be equally valuable.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit in equity by the Union Pacific Railroad Company against James P. Christensen, and his successor, as County Treasurer of Pottawattamie County, Iowa, and others. Decree for defendants, and complainant appeals. Affirmed.

Addison G. Kistle, of Council Bluffs, Iowa (George S. Wright, of Council Bluffs, Iowa, and Edson Rich, of Omaha, Neb., on the brief), for appellant.

Henry Peterson, of Council Bluffs, Iowa (V. A. Morgan, of Council Bluffs, Iowa, on the brief), for appellees.

Before HOOK, Circuit Judge, and TRIEBER and NEBLETT, District Judges.

TRIEBER, District Judge. The Railroad Company instituted this action in equity against the defendants, the county treasurer of Pottawattamie county, Iowa, and the city council of Council Bluffs, Iowa, to cancel certain taxes assessed against its property, in the nature of railroad property, assessed by the executive council of the state pursuant to the laws of the state of Iowa. The taxes in question are for water and light levies for the years 1911, 1912, 1913, 1914, and 1915, and by amendment include the years 1916 and 1917.

The grounds for the relief claimed are that the property is beyond the benefit district of the expenditure of water and light funds, and that it receives no benefit therefrom.

The statutes under which the taxes are assessed are also attacked as being contrary to the state and national Constitutions in the following particulars:

"(a) That section 894 of the Code of Iowa, 1897, and the acts amendatory thereto, under which said attempted levy and tax is claimed, are unconstitutional and in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, and in violation of the Constitution of the state of Iowa.

"(b) That sections 1334 to 1339, inclusive, of the Code supplement of Iowa, 1913, and all sections of the Code of Iowa and supplements relative to the taxation of the property of the appellant, are unconstitutional and void, including those sought to be enforced herein, for the reason that they do not operate uniformly upon railroads owning property in the state of Iowa, and that under said statutes the property of the appellant is valued about four or

five times higher than like property of equal value owned by other railroads in Iowa used for the same purpose and in the same taxing district in the state of Iowa as that of appellant.

"(c) And that said sections are contrary to section 6 of article 1 of the Constitution of the state of Iowa, and also contrary to section 30 of article 3 of the Constitution of the state of Iowa.

"(d) That the aforesaid sections under which the property of the appellant is assessed for taxation purposes are null and void for the reasons that the assessment based thereon amounts to and results in a systematic and intentional discrimination against the property of the appellant herein, and subjects the property of the complainant to a higher rate of tax than like property in like situation used for the same purpose in the same taxing district, and that it amounts to the taking of private property without due process of law, contrary to section 1 of article 14 of the Amendments to the Constitution of the United States, and denies to appellant the equal protection of the law.

"(e) That said sections are contrary to section 2 of article 8 of the Constitution of the state of Iowa, in that it taxes property of corporations differently than property of individuals and for other and different purposes.

"(f) That the so-called assessments are null and void for the further reason that they are not based on a uniform valuation of the property, which results in a systematic and intentional discrimination contrary to section 1 of article 14 of the amendments to the Constitution of the United States."

The answer denies that the property is without the limits of benefit and protection of the waterworks and of the lighting plant, but alleges that they are within the benefit limits of the water and light systems, as created by resolution of the city council of the city for the years in controversy.

Upon the hearing the assessments were held valid, the statutes, under which they were made, constitutional, and the bill of complaint dismissed.

The facts established are that appellant's eastern terminus is located in Council Bluffs, and that is all the property it owns in the state of Iowa. Its mileage in the city and state is 3.78 miles of main track, 2.6 miles of second track, and 43.39 miles of side track, a total of 52.95 miles of all tracks, all in the city of Council Bluffs. It also has a 20-stall brick roundhouse, with a wooden coaling station, cinder pit, water station, and a number of old wooden buildings. It owns a brick passenger transfer depot and hotel constructed in 1877, which is used as a local as well as a transfer passenger station, also a brick local freight station, constructed in 1916, adjoining paved streets and right of way and house tracks, having a capacity of 40 cars. There are tracks on both sides of the platform with a capacity of 75 cars and tracks for car repairs and cleaning coaches with a capacity of about 75 cars.

Other railroads, which traverse the state, with a mileage of several hundred miles in the state, have similar tracks and improvements in the city, but are assessed at a much lower rate than appellant's property, and therefore it is claimed by appellant that there is gross discrimination between its property and that of all other railroads and that of private individuals also.

The learned trial judge correctly held that, even considering all that is claimed, it would not invalidate the statutes attacked, which do not authorize such discriminations, if in fact any existed.

As to the allegation in the complaint that the railroad company receives no benefit whatever from the light and water funds, the finding of the trial judge was:

"The evidence here shows that the plaintiff has substantial benefits both of light and water. True it pays for millions of gallons of water which it uses: so does every householder pay for what he uses. Plaintiff pays for electric current; so does every householder. The particular mode by which plaintiff acquires water and current is not controlling; it does have the benefit of the right to receive these commodities, and whether it receives them through one pipe or one set of wires, or one hundred, cannot be conclusive as to being within the district benefited."

There is no evidence in the record which would have warranted any other finding. As counsel for appellant, neither in their brief, nor in their oral argument have attacked this finding, the allegation must be considered as having been abandoned.

The real and only issue is that of discrimination against it, as compared with the assessments of the property of other railroads operated in the city of Council Bluffs, and the property of individuals therein. There is no substantial evidence to warrant a finding that the property of individuals in the city of Council Bluffs is not assessed at the same proportionate value as is that of the railroads. The testimony of the assessor failed to establish it; besides its admissibility is at best doubtful. In Chicago, Burlington & Quincy R. R. v. Babcock, 204 U. S. 585. 593, 27 Sup. Ct. 326, 327 (51 L. Ed. 636), the court said:

"When we turn to the evidence there is equal ground for criticism. The members of the board were called, including the Governor of the state, and submitted to an elaborate cross-examination with regard to the operation of their minds in valuing and taxing the roads. This was wholly improper. * * * All the often repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law."

[1] But aside from this, to set aside as discriminatory assessments for taxes, it must appear that the discrimination in favor of one class of property or other classes, as against others, was intentional and systematic. Greene v. Louisville & J. R. R., 244 U. S. 499, 517, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Sunday Lake Iron Co. v. Township of Wakefield, 247 U. S. 350, 353, 38 Sup. Ct. 495, 62 L. Ed. 1154; Taylor v. Louisville & Nashville R. R., 88 Fed. 350, 364, 365, 31 C. C. A. 537. In the Lake Iron Co. Case it was said:

"It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party."

Counsel claim that the court should take judicial notice of the fact that real estate in Council Bluffs and other parts of the state is not assessed at its real value, but fails to suggest how this court is to know without evidence how assessments are made in every county, city, and hamlet in the Eighth Circuit.

[2] The contention most earnestly urged by counsel is that the assessments of other railroads having mileage and terminals in Council Bluffs are assessed at a much lower valuation than appellant's property in that city, and therefore there is an unlawful discrimination against it, although in the same class.

While property, real and personal, of individuals is, under the laws of the state, assessed by county assessors, the assessment of the property of railroads is made by the executive council of the state. Section 1334 of Code Supplement of 1913 requires the railroads to report as to the following matters:

"1. The whole number of miles of railway owned, operated or leased by such corporation or company within and without the state;

"2. The whole number of miles of railway owned, operated or leased within the state, including double tracks and side tracks, the mileage of the main line and branch lines to be stated separately, and showing the number of miles of track in each county;

"3. A full and complete statement of the cost and actual present value of all buildings of every description owned by said railway company within the state not otherwise assessed;

"4. The total number of ties per mile used on all its tracks within the state;

"5. The weight of rails per yard in main line, double tracks and side tracks;

"6. The number of miles of telegraph lines owned and used within the state;

"7. The total number of engines, and passenger, chair, dining, official, express, mail, baggage, freight and other cars, including hand cars and boarding cars used in constructing and repairing such railway, in use on its whole line, and the sleeping cars owned by it, and the number of each class on its line within the state, each class to be valued separately;

"8. Any and all other movable property owned by said railway within the state, classified and scheduled in such manner as may be required by said council;

"9. The gross earnings of the entire road, and the gross earnings in this state;

"10. The operating expenses of the entire road, and the operating expenses within this state;

"11. The net earnings of the entire road, and the net earnings within this state."

Section 1335 requires a statement of the operating expenses of the railroad. These reports were made by appellant and all other railroads operating in Council Bluffs. Other sections relating to these assessments are sections 1336, 1337, 1337a, 1338, 1339.

Section 1336 provides as follows:

"The said property shall be valued at its actual value and the assessments shall be made upon the taxable value of the entire railway within the state, except as otherwise provided, and shall include the right of way, roadbed, bridges, culverts, rolling stock, depots, station grounds, shops, buildings, gravel beds, and all other property, real and personal, exclusively used in the operation of such railway. * * *"

Section 1337 provides:

"On or before the first Monday in August of each year, the council shall transmit to the county auditor of each county, through and into which any railway may extend, a statement showing the length of the main track within the county, and the assessed value per mile of the same, as fixed by a ratable distribution per mile of the assessed valuation of the whole property."

Section 1337a provides for a plat showing the length of the main track in each county.

Section 1338 provides as follows:

"At the first meeting of the board of supervisors held after said statement is received by the county auditor, it shall cause the same to be entered on its minute book, and make and enter therein an order stating the length of the main track and the assessed value of each railway lying in each city, town, township or lesser taxing district in its county, through or into which said railway extends, as fixed by the council, which shall constitute the taxable value of said property for taxing purposes; and the taxes on said property, when collected by the county treasurer shall be disposed of as other taxes. The county auditor shall transmit a copy of said order to the council or trustees of the city, town or township."

Section 1339 provides:

"All such railway property shall be taxable upon said assessment at the same rates, by the same officers and for the same purposes as the property of individuals within such counties, cities, towns, townships and lesser taxing districts."

It will thus be seen that railroads are required to be assessed as an entity, including the entire mileage and improvements in the state.

The Chicago, Burlington & Quincy Railroad has 1,366.065 miles in the state and hundreds of stations. Without setting out the mileage and improvements of the other railroads in the state of Iowa, it is sufficient to state that each of them has a mileage of several hundred miles traversing agricultural lands, some uncultivated and not subject to cultivation, many in counties distant from markets; part in small towns and larger cities. If assessed separately on value in every county and town, it would not only cause confusion, but would prevent a valuation on the system as a whole, which is, of course, of great value, and must be considered in determining its value, and thereby cause discrimination. That such statutes as these are not violative of any provision of the national Constitution is beyond question. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; Cleveland, etc., Railroad Co. v. Backus, 154 U. S. 439, 444, 14 Sup. Ct. 1122, 38 L. Ed. 1041; Branson v. Bush, 251 U. S. 182, 187, 40 Sup. Ct. 113, 64 L. Ed. 215; St. Louis, Southwestern R. R. v. State of Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. 265. That it is not objectionable to any provision of the Constitution of Iowa, has been, so far as the national courts are concerned, conclusively determined by the Supreme Court of Iowa. Central Iowa R. R. Co. v. Board of Supervisors, 67 Iowa, 199, 25 N. W. 128; Dubuque v. Chicago, etc., R. R. Co., 47 Iowa, 196.

That a railroad whose property is wholly situated in a large city is more valuable per mile than one traversing hundreds of miles through agricultural sections, and some of but little value, requires no extended argument, and as the assessment of the latter is made as a whole, and then divided equally according to mileage, and when thus divided, certified to the counties, its valuation would naturally be lower per mile than of the former. A late case in point is St. Louis & East St. Louis Electric Ry. Co. v. State of Missouri, 256 U. S. ——, 41 Sup. Ct. 488, 65 L. Ed. ——, opinion filed May 2, 1921, in which the statutes involved are similar to those of the state of Iowa. The Board of Equal-

ization of Missouri had valued the entire property of the company, which owned .865 of a mile of electric railway constructed on a bridge over the Mississippi river at St. Louis, at $537,630 a mile. Only .346 of a mile were in the state of Missouri, and the proportion in Missouri was assessed as of the value of $186,019. The assessment was sustained, the court saying:

"It is apparent that the large value, which it is conceded this street railroad had, was derived, not from its mere franchise, but from the exclusive right which we have seen the company acquired by private contract to operate over the Eads Bridge, a public highway, and from the other rights also derived from private contract, which made its line of track a part of two Illinois systems of railway and gave it a profitable operating agreement with them."

In the instant case the few miles in the state of Iowa, owned by appellant, were in Council Bluffs, and a part of its great system in other states, which gives it a value much greater than if the part in Council Bluffs had no connection with the rest of appellant's system of railways.

No one will contend that a street railway operated exclusively in a city like Chicago cannot be assessed at a higher rate per mile in that city than an interurban system of 100 miles, of which perhaps less than a mile is in the city.

The decree is right and is affirmed.